**UNITED STATES of America, Plaintiff,**

v.

**John GABRIEL, Defendant.**

**No. 77 CR 1068.**

United States District Court,
N. D. Illinois, E. D.

Oct. 1, 1981.

Robert W. Tarun, James R. Ferguson, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Allan Ackerman, Gregory Adamski, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Petitioner John Gabriel was convicted by a jury of conspiring to counterfeit Federal Reserve Notes in violation of 18 U.S.C. § 371, and with counterfeiting Federal Reserve Notes in violation of 18 U.S.C. § 471. On May 16, 1978, Gabriel was sentenced to seven years imprisonment on the substantive count and a consecutive term of five years probation on the conspiracy count. Gabriel's conviction was upheld by the Court of Appeals for the Seventh Circuit in *United States v. Gabriel*, 597 F.2d 95 (7th Cir. 1979), *cert. denied*, 444 U.S. 858, 100 S.Ct. 120, 62 L.Ed.2d 78. On November 13, 1979, Gabriel moved to reduce his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure. Judge Bua denied this motion and thereafter also denied Gabriel's motion to vacate his sentence and reverse his conviction. After Gabriel filed a notice of appeal from the denial of the motion to vacate, and after Judge Bua recused himself from all further proceedings in the case, the Seventh Circuit entered an order remanding the case to the Executive Committee, which in turn assigned the case to this Court. This Court directed Gabriel to file all his claims for relief from his sentence at one time, and in response Gabriel filed a petition pursuant to 28 U.S.C. § 2255 that gives rise to this Memorandum Opinion and Order.

### Sentencing Options

Gabriel first argues that the trial court punished him for his persistence in maintaining his innocence and that such an action constitutes a denial of due process of law. It is undisputed that a defendant may not be punished for maintaining his innocence and asserting his constitutional right to a jury trial. *United States v. Wiley*, 278 F.2d 500 (7th Cir. 1960). Gabriel points to the following colloquy at the hearing held on Gabriel's motion for reduction of sentence as evidence that Judge Bua did penalize him for asserting his innocence:

MR. TARUN (Attorney for United States): We strongly oppose any reduction of sentence in this matter. The court's original sentence was seven years. John Gabriel was a convicted felon. He was previously convicted of robbery in state court. This was one of the largest counterfeiting cases in the history of the Northern District of Illinois. The defendant to this date shows no remorse for his conduct or involvement in that crime....

Gabriel responded with a lengthy plea for sentence reduction touching upon, among other things, evidentiary rulings made at trial, the credibility of certain witnesses, the conduct of the prosecution, and the competence of his counsel. After listening to Gabriel's argument, Judge Bua stated:

THE COURT: Mr. Gabriel, I struggled over your sentence on the occasion of the original sentence.[1] I thought the court was compassionate at that time.

I will respond to two of your questions to the court. What worthwhile purpose does incarceration serve in your case? It serves one worthwhile purpose that I can think of and what the court had in mind when it sentenced you to seven years in the custody of the Attorney General. That is deterrence. This was a serious crime involving, as I recall, over a million

---

1. At Gabriel's sentencing Judge Bua had stated as follows:

Mr. Gabriel, your attorney, Mr. O'Donnell, did what I consider a most admirable job in defending you, one of the best defenses I have ever seen in my 15 years on the bench. He presented your evidence in the best possible light.... And the jury returned a verdict against you.

You were found guilty by the jury of a very, very serious crime. As a matter of fact, in the common law, it is my understanding that a crime such as this was a capital offense.

To impose a sentence less than the Court is considering, in my humble opinion, would deprecate the seriousness of the crime.

Given your background, three prior convictions, the seriousness of the crime, the Court must sentence you as follows:

Count Two: Seven years in the custody of the Attorney General.

Count One: Five years probation to be served consecutively upon release.

dollars in counterfeit. Okay? For that reason you have received the seven-year sentence in the custody of the Attorney General.

I commend you for your industry, but to this date, Mr. Gabriel, and it has been almost two years, and after a jury has found you guilty and after you have had the benefit of counsel whom I had occasion to remark offered probably one of the best defenses I have ever seen in 16 years on the bench and 11 years as a practicing attorney. Your lawyer did just an outstanding job in defending you. Okay?

MR. GABRIEL: Yes, sir.

THE COURT: You still to this day, after a finding by the jury, to this day, profess your innocence. You haven't even taken that first step toward rehabilitation if the court were to consider rehabilitation as an alternative form or philosophy of sentencing. To this day, you have not said, "I am sorry. I am contrite." For that reason, Mr. Gabriel—and I feel all compassion for your family. It always hurts the family, probably more, as you say, I quite agree, probably more than it will hurt you, because you have done time. You can do it. You will do it easily as anyone, in my humble opinion. Your family will do much harder time than you will while you are incarcerated. And I do have compassion for that, but for the reasons stated in the original sentencing, your motion to reduce the sentence will be denied.

MR. GABRIEL: Your Honor—

THE COURT: Yes.

MR. GABRIEL: —is what you are saying that if I were to reverse my plea, and I would submit to you and say now that I'm guilty, and that I'm sorry, that I will carry this thing no farther, that you will reconsider it? Is that what you are telling me?

THE COURT: I am saying if you originally were contrite and admitted your guilt openly, honestly, and candidly, the court probably would have given you a lighter sentence than seven years. This seven-year sentence is the most stringent sentence I have imposed in two years here, well, outside of narcotics cases.

I'm sorry, Mr. Gabriel. Surrender date November 18. (Emphasis added).

Gabriel highlights the underscored portions of Judge Bua's comments, arguing that these statements indicate that the judge's sentencing decision and his decisions on Gabriel's motions to reduce and vacate his sentence were tainted by an impermissible intent to penalize him for having gone to trial. Judge Bua's statements, however, must be taken in context. In opposing Gabriel's motion for sentence reduction, the government argued that Gabriel had failed to take even the first step toward rehabilitation in that he had shown no remorse for his actions. Gabriel effectively strengthened the government's argument by using his response as a forum for attempting to relitigate his case. Judge Bua's comments came as a result of Gabriel's persistent attempts to relitigate every point of his trial and expressed the judge's concern that Gabriel had not yet come to face the reality of the jury's verdict.

■ A fair review of Judge Bua's remarks taken in full context reveals a lack of any improper sentencing motive on the part of the judge. The judge made it clear, both at the original sentencing and at subsequent hearings, that he was considering the circumstances of the crime and the character of the defendant—considerations which are proper and necessary in reaching a sentencing decision. *United States v. Allen*, 596 F.2d 227, 231 (7th Cir. 1979), *cert. denied*, 444 U.S. 871, 100 S.Ct. 149, 62 L.Ed.2d 97.[2] As in *Allen*, the sentence giv-

---

**2.** Judge Bua's statements are virtually indistinguishable from comments found to be permissible by the Seventh Circuit in *Allen* and in *United States v. Lehman*, 468 F.2d 93 (7th Cir. 1972), *cert. denied*, 409 U.S. 967, 93 S.Ct. 273,

34 L.Ed.2d 232. In *Allen*, 596 F.2d at 231 n.3, the trial court stated in part:

I don't know what the defense was in this case. I don't know why the defendant went to trial.... There is absolutely no indication of any remorse, in the sense of having made

en to Gabriel was well below the statutory maximum, was not harsh, and was not a penalty for going to trial. *Id.* The record shows that the sentence and the denial of Gabriel's motions for reduction and vacation of that sentence were decisions reached in "a thoughtful and discriminating way," *United States v. Santiago,* 582 F.2d 1128, 1137 (7th Cir. 1978), and accordingly, this Court will not alter those decisions.

■ Gabriel also moves this Court to vacate his sentence on the grounds that in sentencing, the trial court impermissibly considered certain information allegedly received by the trial court *in camera* during the course of Gabriel's trial. It is clear, however, that the judge neither reviewed nor considered the document in question when reaching his sentencing decision. Indeed, on December 20, 1979, Judge Bua stated for the record that he never looked at the document as part of his sentencing consideration. In light of both Judge Bua's explicit disclaimer of reliance upon the document at issue, and the paucity of any evidence in the record to suggest that the judge did so rely, this Court finds that the sentence imposed was not based upon any impermissible consideration. *See Lawary v. United States,* 599 F.2d 218, 226–27 (7th Cir. 1979).

*Jury Instructions*

■ Gabriel argues that two of the supplemental instructions given to the jury were improper. The first instruction challenged by Gabriel is the supplemental *Allen* charge as modified in *United States v. Silvern,* 484 F.2d 879, 883 (7th Cir. 1973). The propriety of this instruction was reviewed at length by the Seventh Circuit in considering Gabriel's direct appeal, *United States v. Gabriel, supra,* 597 F.2d at 100, and was found to be proper.[3] Petitioner has failed to provide any reason why this Court should review an instruction specifically found to be proper by the Seventh Circuit.

■ Gabriel also complains of the trial court's response to a note from the jury requesting to see a printing plate.[4] Gabriel construes the request to indicate that the jury mistakenly believed that the actual printing plate used in the commission of the crime was introduced into evidence, whereas in reality, only a blank plate was introduced for demonstrative purposes. The jury's request, however, is susceptible to a variety of interpretations. It is not at all clear that the jury misunderstood the nature of the plate that was introduced into evidence. Rather than draw undue attention to any particular piece of evidence, the trial court properly and accurately respond-

a mistake, because, of course, there is no admission or concession of any kind.... [I]t is ... my business to take into consideration the nature of the person I am dealing with and the nature of his attitude toward what he had done when I impose sentence.

In *Lehman,* 468 F.2d at 109–10 n.17, the trial court stated in pertinent part:

I think that he [the defendant] would be in a different position today standing before me if he had, in effect, having made a clear breast of it, of the affair, had decided that he was in trouble, yes, of course, he was in trouble, but he had the opportunity to come in here and offer a plea and stand before me, as he is today, with a request for leniency on the basis that he had made a bad mistake and ask me for leniency. But he chose a different course. He chose to come in, and, instead of, in effect, saying, 'I got myself in trouble and I am sorry,' he, in effect, tried to convince the jury through trial tactics ... that perhaps he didn't commit this offense....

[W]hen he takes this course, with the attempt, in effect, to blame somebody else for his own wrongdoing, I don't think that he is entitled to as much consideration as the person who comes in, admits that he is wrong, and says, 'I made a mistake,' and that's it.

**3.** Gabriel also has filed a supplement to his motion under 28 U.S.C. § 2255, wherein he argues that the Supreme Court decision in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), casts doubt upon the Seventh Circuit decision affirming Gabriel's conviction. After reviewing the *Sandstrom* decision, the Court finds that it in no way implicates the Seventh Circuit decision in *United States v. Gabriel, supra.*

**4.** The jury request stated as follows: "Please submit to the jury now in deliberation the plate used for printing. It is aluminum."

ed to the jury request by instructing the jury that it had "all the evidence necessary to reach a verdict." Gabriel was not prejudiced by this truthful and appropriate response, nor was he prejudiced by the fact that the judge responded to the jury's request in writing rather than by calling the jury into court and instructing them orally with the defendant present. *See Stein v. United States*, 313 F.2d 518 (9th Cir. 1962), *cert. denied*, 373 U.S. 918, 83 S.Ct. 1307, 10 L.Ed.2d 417 (1963).[5]

### Alleged Errors At Trial

■ Gabriel raises a variety of other alleged trial court errors, but fails to focus on constitutional or jurisdictional issues and, accordingly, these claims are not cognizable for review under § 2255.[6] The statute itself sets the substantive guidelines:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.... If the court finds that the judgment was rendered without jurisdiction ... or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside....

In *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979), the Supreme Court explained the perspective that a trial court must bring to a § 2255 action:

When Congress enacted § 2255 in 1948, it simplified the procedure for making a collateral attack on a final judgment entered in a federal criminal case, but it did not purport to modify the basic distinction between direct review and collateral review. It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. The reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system of justice. The question in this case is whether an error has occurred that is sufficiently fundamental to come within those narrow limits.

. . . . .

[Section 2255] does not encompass all claimed errors in conviction and sentencing. Habeas corpus has long been available to attack convictions and sentences entered by a court without jurisdiction.... In later years, the availability of the writ was expanded to encompass claims of constitutional error as well.... But unless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited.... The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted "a fundamental defect which inherently results in a complete miscarriage of justice."

In so holding, the Court paid heed to an unblemished line of precedent dating back to 1942. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *Sunal v. Large*, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947); *Adams v. United States ex rel. McCann*, 317 U.S. 269,

---

**5.** Gabriel's other claims of improper jury instructions as set forth in his "supplement to motion under 28 U.S.C. 2255" are similarly meritless.

**6.** One of Gabriel's claims—that his presentence report and prison records contain inaccurate information, thus affecting his potential for parole—does not even purport to attack his sentence or underlying conviction. This claim clearly is not cognizable under § 2255.

63 S.Ct. 236, 87 L.Ed. 268 (1942). Indeed, in *Addonizio*, the Court noted what has become hornbook law, that "the writ of *habeas corpus* should not do service for an appeal." 442 U.S. at n.10, 99 S.Ct. at 2240. *See Arias v. United States*, 484 F.2d 577, 579 (7th Cir. 1973), *cert. denied*, 418 U.S. 905, 94 S.Ct. 3195, 41 L.Ed.2d 1153 (1974); *Brown v. United States*, 480 F.2d 1036, 1038 (5th Cir. 1973); Wright, Federal Practice and Procedure: Criminal § 595 at 607, 612.

█ Where, as here, the petitioner took a direct appeal from his judgment of conviction, but chose not to raise the issues now presented in his collateral attack, it becomes especially important to ensure that § 2255 not be used as merely another avenue for appeal. *Grimes v. United States*, 607 F.2d 6, 10 (2d Cir. 1979).[7] Thus, in reviewing Gabriel's allegations of trial court errors, the threshold question is whether errors of constitutional or jurisdictional dimension are being raised. If neither constitutional nor jurisdictional errors are at issue, then the Court must determine whether any of the alleged errors constitute a "fundamental defect which inherently results in a complete miscarriage of justice." *Addonizio*, 442 U.S. at 185, 99 S.Ct. at 2240, quoting from *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). *See also Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). It is within this analytic framework that the Court considers the majority of petitioner's allegations.

█ The following of petitioner's allegations raise issues which are neither constitutional nor jurisdictional in scope and are followed when appropriate by citations to decisions which so hold:

(a) Failure to sequester the jury was improper.

(b) Judicial misconduct and bias. *Vandergrift v. United States*, 313 F.2d 93 (9th Cir. 1963).

(c) Prosecutorial misconduct. *Holt v. United States*, 303 F.2d 791 (8th Cir. 1962), *cert. denied*, 372 U.S. 970, 83 S.Ct. 1095, 10 L.Ed.2d 132 (1963).

(d) The government presented a case outside the scope of the indictment.

(e) Double jeopardy. *Armstrong v. United States*, 367 F.2d 821 (7th Cir. 1966).

(f) Validity of the indictment. *Tallman v. United States*, 465 F.2d 282, 286 (7th Cir. 1972); *Rice v. United States*, 420 F.2d 863 (5th Cir. 1969).

(g) Insufficient evidence to support the verdict. *United States v. Norton*, 539 F.2d 1194 (8th Cir. 1976).

Of course, some of these allegations, if true, and if of a sufficiently egregious nature, could constitute substantive due process violations. Due to this possibility, and due to the Court's mindfulness of its responsibility to vigilantly ferret out any potential constitutional violations that may have arisen, the Court has thoroughly examined the entire record in this proceeding. After careful and painstaking analysis, however, the Court finds that petitioner's allegations have no basis in fact.

█ Gabriel's allegation of judicial bias is based wholly upon wild speculation. He provides not a scintilla of evidence to support his accusation that the judge participated in improper pretrial discussions with the prosecution regarding the case. Indeed, it is abundantly clear from the record that Judge Bua, an experienced and able trial judge, conducted an eminently fair trial.

█ Similarly, Gabriel's allegation of prosecutorial misconduct is created out of whole cloth. Indeed, although Gabriel devotes nearly 50 pages of his brief to this allegation, most of his verbiage is actually an attempt to relitigate the trial by raising questions of relevancy, materiality, competence, and hearsay. These evidentiary is-

---

**7.** As the Seventh Circuit stated in quoting from *Kaufman v. United States*, 394 U.S. 217, 227 n.8, 89 S.Ct. 1068, 1074 n.8, 22 L.Ed.2d 227 (1969), "a court entertaining a section 2255 petition 'may in a proper case deny relief to a federal prisoner who has deliberately bypassed the orderly federal procedures provided at or before trial and by way of appeal.'" *Grieco v. United States*, 435 F.2d 677, 678 (7th Cir. 1970).

sues brought under the guise of a claim of prosecutorial misconduct, do not raise any constitutional or jurisdictional issues. *See Houser v. United States,* 508 F.2d 509, 515–16 (8th Cir. 1974); *United States v. Granello,* 403 F.2d 337 (2d Cir. 1968), *cert. denied,* 393 U.S. 1095, 89 S.Ct. 878, 21 L.Ed.2d 785 (1969); *Holt v. United States,* 303 F.2d 791 (8th Cir. 1963). Moreover, the record is barren of any evidence that the prosecution engaged in any improper activity during the course of Gabriel's trial.[8] The statements made by the prosecutor, which Gabriel characterizes as "lies" and "misrepresentations," were in reality solidly based upon the evidence presented at trial.

■ Gabriel's claim that the government argued a case outside the indictment also is without substance. Count Two of the indictment charged Gabriel with counterfeiting "in excess of" 4500 $20 Federal Reserve Notes. The government's introduction of evidence of counterfeit notes that were recovered at O'Hare Airport clearly supported the charge in the indictment.

■ On the issue of sequestering the jury, Gabriel fails to show that any prejudice resulted from allowing the jury to return home for one evening after a long day of deliberations. Instead, Gabriel again resorts to speculation and flights of imagination. Nowhere in the record or in Gabriel's brief is there a hint of evidence that Gabriel suffered any prejudice due to the trial court's decision to allow the jury to return home. Nonetheless, Gabriel states as follows:

One of the jurors, Jack Baker, was a newspaper reporter. It is likely, being a juror on the case, that he was contacted and questioned by his newspaper or others. Furthermore, seven jurors lived in far suburbs; Chicago Heights, LaGrange Park, Morton Grove, two from Dolton, Oaklawn, and one from the outskirts of Chicago near O'Hare Field. Three of the jurors lived in or had to pass through high crime areas. Four were women who had to travel long distances. This put them under an unnecessary burden of safety and inconvenience. The psychological stress relating to their safety alone would have been coercive enough to force them into a verdict for the sake of verdict alone.

■ This claim well illustrates the lengths to which Gabriel will go to conjure up the appearance of a claim. Gabriel also argues that the imposition of consecutive sentences under the two counts of the indictment violated the double jeopardy clause because of an overlap of proof. In order to avoid double jeopardy, the proof required for conviction must meet the test promulgated by the Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *United States v. Greschner,* 647 F.2d 740 (7th Cir. 1981). The *Blockburger* test is as follows:

[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provi-

---

**8.** Underlying much of Gabriel's claim regarding prosecutorial misconduct is the charge that one of the prosecution's witnesses, Joe Donato, lied under oath. Where perjury is an issue under § 2255, a defendant must show that a prosecutor knew or should have known that a witness' answers were false. *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *United States v. Robinson,* 585 F.2d 274, 279 (7th Cir. 1978). Nowhere in his lengthy brief does Gabriel claim that the prosecutors knew that Donato was lying. Gabriel does assert, however, that based on certain inconsistencies in Donato's testimony and based on Donato's plea agreement, the prosecutors "should have known" that Donato was

not being truthful. The record, however, contains no basis for such a belief on the part of the prosecutors. Indeed, Gabriel would impose upon the prosecution the burden of viewing all evidence and testimony in the light most favorable to the defense. Moreover, Gabriel's charges about Donato constitute the selfsame arguments that were made to and rejected by the jury; and in part, these are the same arguments made to and rejected by the Seventh Circuit in Gabriel's direct appeal. These claims, based primarily upon speculation and suspicions, are insufficient to raise the issue of prosecutorial misconduct due to perjured testimony. *See United States v. Robinson, supra,* 585 F.2d at 279–80 n.9.

sion requires proof of a fact which the other does not.

It is well settled that the commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes, and only if the substantive offense and the conspiracy are identical does a conviction for both constitute double jeopardy. *Pereira v. United States*, 347 U.S. 1, 11, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954). The substantive counterfeiting charge under which Gabriel was convicted, 18 U.S.C. § 471,[9] does not require more than one person for its commission. The essence of the conspiracy charge, however, is an agreement between two or more persons to commit an offense against the United States. 18 U.S.C. § 371.[10] The essence of substantive claim is the commission of the counterfeiting act, an element that does not exist for proof of conspiracy. Accordingly, petitioner's double jeopardy claim is without merit.

 Gabriel's charge regarding the validity of his indictment has no basis in fact or law. Indeed, Gabriel admits in his brief that he has no knowledge of whether his indictment was valid or not, but he challenges it nonetheless. Gabriel's claim that the evidence adduced at trial was insufficient to support his conviction is similarly without merit. After carefully reviewing the record in this matter in the light most favorable to the government, as we must do in such a case, *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh. denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), the Court concludes that the evidence produced at trial was sufficient to support the conviction.

 Having found that Gabriel's above-detailed claims raise neither constitutional nor jurisdictional issues and that the claims are substantively without merit, it is somewhat superfluous for the Court to address the question of whether the alleged errors constitute fundamental defects which inherently result in a complete miscarriage of justice. *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979). It is obvious that where, as in this case, the petitioner's claims are wholly without substantive merit, petitioner has not been subjected to fundamental defects resulting in a miscarriage of justice.

Lastly, Gabriel contends that he had unearthed new evidence which shows that the government withheld certain information from him in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Gabriel claims that the government "was aware" that the Chicago Police Department had issued a bulletin dated October 7, 1976, stating Joe Donato was wanted for investigation of a homicide.[11] Gabriel contends that this information should have been disclosed so that Gabriel could have used it at trial.

 As a preliminary matter, it is evident that the document at issue was in existence over 1½ years prior to Gabriel's trial. In a § 2255 action, as in a proceeding for a writ of error *coram nobis* based on newly-discovered evidence, the petitioner must show that due diligence could not have revealed the evidence prior to trial. *United States v. Hedman*, 655 F.2d 813 at 815 (7th Cir. 1981); *United States v. Robinson*, 585 F.2d 274, 279 (7th Cir. 1978). It is fair to conclude that Gabriel had ample opportunity to discover the information regarding Donato and that he could have discovered the information had he exhibited due diligence. Gabriel provides no explana-

---

9. 18 U.S.C. § 471 states in full:

Whoever, with intent to defraud, falsely makes, forges, counterfeits, or alters any obligation or other security of the United States shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

10. In pertinent part, 18 U.S.C. § 371 states:

If two or more persons conspire to commit any offense against the United States ...

and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

11. Donato was separately indicted and convicted as a co-conspirator in the counterfeiting operation. Before sentencing, he agreed to testify against Gabriel in return for a recommendation of three years' imprisonment.

tion for why he has waited nearly five years from the date of the document and three years from the date of his indictment before "discovering" this information. On this ground alone, petitioner's claim should be rejected.

█ There are, however, additional substantive grounds for refusing his claim. Gabriel contends that "the government was aware that Donato was wanted in that investigation," yet he fails to show any support for this contention. There is no evidence showing that the prosecutors were aware of the police bulletin. In contrast to Gabriel's speculative assertion, the government attorneys who prosecuted him have presented the Court with affidavits in which they swear that they first saw the police bulletin regarding Donato in February 1981, well after the conclusion of the trial.

Lastly, even if Gabriel's assertions were true and the prosecutors had knowingly withheld the police bulletin taken in the context of the entire record, this additional information would not have created a reasonable doubt that did not otherwise exist, and hence there would be no constitutional error. *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976); *United States v. Robinson*, 585 F.2d 274, 281 (7th Cir. 1978). The fact that Donato was wanted for questioning could serve no purpose other than to be used for impeaching Donato's testimony. The impeachment value of this testimony, how-

ever, would have been minimal considering the fact that it was admitted at trial that Donato was a convicted felon who had entered into a plea agreement with the government. The information presented to the jury about Donato was significantly more damaging to Donato's credibility than the information contained in the police bulletin. The Court accordingly concludes upon review of the entire record that the requisite reasonable doubt has not been created.

For the foregoing reasons, the Court concludes that petitioner's motion for relief from sentence pursuant to 28 U.S.C. § 2255 must be denied. Additionally, the Court finds that there exists no reason to conduct an evidentiary hearing on any of the matters raised by Gabriel's motion.[12] "Where a record conclusively demonstrates that a defendant is entitled to no relief on his section 2255 petition to vacate sentence, a full evidentiary hearing is not required." *United States v. Robinson*, 585 F.2d 274, 280 (7th Cir. 1978), *citing Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).[13] It is so ordered.

---

**12.** If a factual dispute were found to exist, an adversary hearing would be appropriate. *Stokes v. United States*, 652 F.2d 1 (7th Cir. 1981). In the instant case, however, there are no factual disputes, and the Court's decisions have been based purely on legal arguments. The only dispute that comes close to raising a factual issue regards the question of whether the prosecutors had access to the Chicago Police Department bulletin regarding Donato before or during Gabriel's trial. That issue, which involves a fact solely within the knowledge of the prosecutors themselves, was resolved by the affidavits filed by the prosecutors. Gabriel's unsupported accusation merits no weight in contrast to the prosecutor's affidavit. Moreover, Gabriel has failed to suggest that he could present any evidence or outside testimony to negate the facts included in the

prosecutors' affidavits. More importantly, this Court's decision on Gabriel's *Brady* claim regarding the Donato police bulletin was not premised solely on the fact that the prosecutors were unaware of the bulletin. Even if the prosecutors had access to the bulletin and failed to provide it to the defendant, Gabriel's § 2255 motion would nonetheless be denied because of his lack of due diligence and the inability of the new evidence to create a reasonable doubt as to his guilt. *See* pp. 181–182 *supra*.

**13.** Nor, for the reasons set forth in denying an evidentiary hearing, is there any reason to allow petitioner discovery. Similarly, Gabriel's motion for reconsideration of the Court's refusal to appoint a handwriting expert is denied.